Filed 1/27/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B335936 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA036245) |
| v. | |
| ROGER MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge. Affirmed.

Lenore De Vita, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Roger Martinez appeals from the denial of his petition for resentencing under Penal Code[1] section 1172.6, formerly numbered 1170.95. Defendant argues it was error for a judge other than the judge who originally sentenced him to rule on his petition. We conclude this challenge is forfeited for failure to raise it below. Assuming arguendo he preserved his challenge, defendant fails to show prejudice. Accordingly, we affirm.

## FACTUAL BACKGROUND

The following is taken from defendant's brief filed below in advance of the resentencing hearing, in which he summarized the prosecution's evidence at his original trial.

On the night of July 10, 2006, Oscar Flores was driving on Avenue R in Lancaster. In the car with him were two members of the YBR gang, Ezekiel Gonzalez and Ivan Sanchez. They spotted a white Ford Fiesta driven by a person identified by Flores as Ricardo Valenzuela, a member of YBR's rival gang, TNB. According to Flores, Valenzuela had shot at him from that car earlier that year, so Flores decided to follow the Fiesta.

As they turned onto 10th Street, a black car driven by a person Flores identified as defendant pulled alongside Flores' car. Flores saw muzzle flashes from defendant's car and felt a burning sensation in his arm. In a police interview, Flores stated Gonzalez fired back. Flores lost control of his car and crashed into another vehicle. Gonzalez died from a gunshot wound.

In a police interview, Sanchez similarly reported that he, Flores, and Gonzalez were following a white car they recognized as belonging to a TNB member. Someone in another car pulled

---

[1] Unspecified statutory citations are to the Penal Code.

up alongside and opened fire at them. Gonzalez fired back, then stated he had been hit and thought he was dying. Flores crashed the car into another vehicle.

Police interviewed defendant twice. Initially, he denied being involved in the shooting, but later stated he was present, but was not the shooter. He said Valenzuela had called and said someone was following Valenzuela, and "told him to get his strap." Defendant, with TNB gang member Victor "Largo" Flores in his back seat, drove to 10th Street where he saw a white car following Valenzuela. Defendant pulled his car alongside the white car and Largo began shooting. The occupants of the white car fired back, and defendant drove away.

## PROCEDURAL BACKGROUND

### 1. *Conviction and petition for resentencing*

An information jointly charged defendant and Valenzuela with Gonzalez's murder and the attempted murder of Flores and Sanchez, and alleged gang and firearm allegations. Defendant and Valenzuela were tried separately. Judge Hayden Zacky presided at defendant's trial and sentencing; Judge Blanchard presided at Valenzuela's trial and sentencing.[2] Defendant did not testify at his trial, but did testify at Valenzuela's trial.[3]

---

[2] On our own motion, we take judicial notice of the clerk's transcript in case No. B340254, which is Valenzuela's appeal from his own section 1172.6 proceeding. That transcript confirms Judge Blanchard presided over Valenzuela's trial. She also presided over his section 1172.6 proceeding, denying his petition the same day she denied defendant's resentencing petition.

[3] We summarized defendant's testimony at Valenzuela's trial in our opinion in Valenzuela's appeal from his conviction:

Defendant's jury was instructed, inter alia, on the natural and probable consequences theory of murder with a target offense of assault with a firearm. The jury convicted defendant of first degree murder and two counts of attempted premeditated murder, and found true the special allegations except for the allegation that defendant intentionally discharged a firearm causing great bodily injury or death to Flores. The trial court sentenced defendant to 120 years to life. We affirmed the judgment. (*People v. Martinez* (Dec. 23, 2009, B209939) [nonpub. opn.].)[4]

On December 6, 2021, defendant filed a petition for resentencing under former section 1170.95, now 1172.6. Judge Blanchard was assigned to rule on the petition, and she appointed counsel for defendant. The prosecution conceded defendant had made a prima facie showing of eligibility for resentencing, so the resentencing court issued an order to show cause and scheduled an evidentiary hearing.

---

"[Defendant] testified that he had been close friends with Valenzuela in high school. [Defendant] denied ever hearing of TNB or making any incriminating statements to detectives." (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1223 (*Valenzuela*).)

[4] Valenzuela was convicted in his separate trial of the murder and two attempted murders with all special allegations found true, and was further convicted of three additional counts of attempted murder arising from a shooting for which defendant was not charged. Valenzuela was sentenced to 230 years to life. (*Valenzuela, supra*, 199 Cal.App.4th at pp. 1217–1218.) On appeal we modified the judgment to stay the 15-year minimum parole eligibility term on two of the attempted murder counts, but otherwise affirmed. (*Id.* at p. 1239.)

## 2.    *Evidentiary hearing*

The evidentiary hearing took place on November 17, 2023, with Judge Blanchard presiding and defendant present with counsel.

Judge Blanchard began, "I will state for the record that I was the judge who heard the testimony that was given at the original trial." She continued, "In addition, I have refreshed my memory by reading the Court of Appeal opinion in this case. But in terms of that Court of Appeal opinion, I'm not going to be relying on any of that for my findings. I'm going to be relying on the testimony that was actually received at the trial."

At the prosecution's request, the court took judicial notice of the file from defendant's original trial, including the reporter's transcripts and the evidence submitted. The prosecution called the court's attention in particular to the recordings of defendant's police interviews, Flores's testimony, and Sanchez's statements.

### a.    Defendant's testimony

Although he did not testify at his trial, defendant did testify at his resentencing hearing. He stated that on July 10, 2006, he received a call from Valenzuela who said some people were following Valenzuela. Valenzuela told defendant where he was, and defendant drove in that direction. Defendant had a semiautomatic pistol in his waistband. He added that it was not unusual at that time for him to be carrying a pistol.

As defendant drove on Avenue R, he saw Valenzuela driving towards him. Valenzuela turned onto 10th Street, and defendant saw another car driving "erratically" behind Valenzuela, including driving through a red light. Defendant

5

turned his own car onto 10th Street to get between Valenzuela and the car following Valenzuela.

The car that had been behind Valenzuela was now behind defendant, only inches from the rear of defendant's car, and the driver began honking and flashing his lights. Defendant steered his car to the side and the other car pulled up beside him.

Defendant saw two people in the car, one of whom had a gun. Defendant saw a muzzle flash, and his back window shattered. Defendant pulled out his own pistol and fired back, approximately four shots. The shooter in the other car continued to fire at defendant's car, perhaps six or seven times. Defendant's pistol jammed and he sped off. In his rearview mirror he saw the other car crash into an oncoming vehicle.

Defendant testified he fired in self-defense because the other car had fired upon him first, and he was "in fear for my life."

On cross-examination, defendant stated he lied in his police interviews when he said he was not involved in the shooting and lied to the police again when he said he was there when the shooting occurred, but it was Largo who did the shooting. He said there was no person named Largo, and he had made up the name. He said he was now telling the truth that he was the actual shooter.

Defendant acknowledged that as a gang member he was obligated to back up fellow gang member Valenzuela if a rival gang was attacking him, and that is what defendant was doing the night of the shooting.

### b. Argument and resentencing court's ruling

Following defendant's testimony the parties rested. The prosecution argued defendant's statements to the police

6

contradicted his testimony, and the evidence at trial indicated Valenzuela had called defendant to tell him to "get the strap," meaning his pistol, and prepare to ambush the rival gang members. The prosecution contended there was evidence of direct aiding and abetting as well as defendant himself committing the fatal shooting.

The defense argued defendant's testimony was "direct," "honest," and "strong," and based on the evidence that he acted in self-defense, he could no longer be convicted of murder under current law.

The court stated, "[I]n light of all the other evidence and statements previously made by [defendant], the court does not find his current testimony to be credible. [¶] The court feels that the evidence introduced at trial and, again, including this inconsistent statement with defendant . . . now certainly taken cumulatively, well establishes beyond a reasonable doubt that [defendant] could be convicted of any or all of the charges against him that the jury previously found him guilty on as well as the allegations thereto." The court denied the petition for resentencing.

Defendant timely appealed.

## DISCUSSION

On appeal, defendant contends he was statutorily entitled to have Judge Zacky, the judge who originally sentenced him, preside over his section 1172.6 petition. For that reason, he contends, we must reverse Judge Blanchard's order denying his petition and remand for a new resentencing hearing before Judge Zacky. As set forth below, defendant has forfeited this argument, and to the extent it is preserved, defendant fails to show

7

prejudice from the resentencing hearing being before
Judge Blanchard instead of Judge Zacky.

## A.    Applicable Law

Section 1172.6 provides a mechanism for defendants to
seek retroactive resentencing if they could no longer be convicted
of murder, attempted murder, or manslaughter under
amendments to the Penal Code enacted in 2018.  (See *People v.
Lee* (2023) 95 Cal.App.5th 1164, 1173 (*Lee*).)  Relief is potentially
available to, inter alia, people "convicted of felony murder or
murder under the natural and probable consequences doctrine or
other theory under which malice is imputed to a person based
solely on that person's participation in a crime."  (§ 1172.6, subd.
(a).)

"If a petitioner makes a prima facie showing of relief under
section 1172.6—that is, a showing that the petitioner was
convicted of murder, attempted murder, or manslaughter under a
theory no longer valid under the amended Penal Code—the
resentencing court must issue an order to show cause for an
evidentiary hearing.  (§ 1172.6, subd. (c); *People v.
Hurtado* (2023) 89 Cal.App.5th 887, 891.)  At that hearing, the
prosecution must prove beyond a reasonable doubt that the
petitioner remains guilty of murder or attempted murder despite
the amendments to sections 188 and 189. (§ 1172.6, subd. (d)(3).)"
(*Lee, supra*, 95 Cal.App.5th at p. 1174.)

As relevant to this appeal, section 1172.6 requires that the
petition "be filed with the court that sentenced the petitioner . . . .
If the judge that originally sentenced the petitioner is not
available to resentence the petitioner, the presiding judge shall
designate another judge to rule on the petition."  (§ 1172.6,
subd. (b)(1).)

8

Courts have "interpret[ed] the statute to require the judge who originally sentenced the petitioner to rule on the petition, unless that judge is unavailable." (*People v. Santos* (2020) 53 Cal.App.5th 467, 472 (*Santos*); accord, *Estrada v. Superior Court* (2023) 93 Cal.App.5th 915, 922.) Courts have referred to this as the "same judge" rule. (*Gomez v. Superior Court* (2024) 100 Cal.App.5th 778, 784; *Torres v. Superior Court* (2023) 94 Cal.App.5th 497, 505.) Our colleagues in Division Five explained the rationale for this rule: "[A] judge who is familiar with the facts, evidence, and law already part of the record is better equipped to rule on a petition than a different judge, unfamiliar with the case, who is reviewing a cold record. [Citations.] The Legislature's intent is best served when the outcome of the petition is determined by a judge who is particularly well placed to take all the facts and circumstances of the underlying case into account." (*Santos*, *supra*, at p. 474.)

Error in assigning a section 1172.6 petition to a judge other than the original sentencing judge is subject to harmless error analysis. (See *People v. Daniel* (2020) 57 Cal.App.5th 666, 679.) Defendant concedes the applicable standard for prejudice is set forth in *People v. Watson* (1956) 46 Cal.2d 818, under which we may reverse only if "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Id.* at p. 836.) " ' " [A] "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " ' [Citation.]" (*People v. Hendrix* (2022) 13 Cal.5th 933, 944 (*Hendrix*).)

9

**B.    Analysis**

Defendant has forfeited his challenge to Judge Blanchard's assignment to his case because he did not object below.  (*People v. Romero* (2008) 44 Cal.4th 386, 411.)  Our Supreme Court applied the forfeiture doctrine in analogous circumstances in *People v. Halvorsen* (2007) 42 Cal.4th 379 (*Halvorsen*).

In *Halvorsen*, a judge substituted in for another judge for two days during jury deliberations in the penalty phase of a criminal trial.  (*Halvorsen, supra*, 42 Cal.4th at p. 427.)  On appeal, the defendant contended the substitution violated the statute governing substitution of judges in criminal trials, section 1053, because there was no showing the original judge was unable to preside.  (*Halvorsen, supra*, at p. 429.)  The Supreme Court concluded the defendant had forfeited his challenge by not objecting to the substitution in the trial court.  (*Ibid.*)  The court reasoned, "This case perfectly exemplifies the basis for the forfeiture doctrine, for, had defendant objected, either the record would reflect why [the original judge] was unable to preside or [the original judge] would in fact have presided.  Were the rule otherwise, defendants 'would be discouraged from making timely objections since, if the ultimate judgment were unfavorable, the defendant "would receive a second 'bite at the apple'. . . ." [Citation.]' [Citation.]" (*Ibid.*)

These same considerations apply in the instant case.  Had defendant objected that Judge Zacky had not been assigned to his resentencing petition, either Judge Zacky would have taken over or the record would indicate why he was not available to do so.  We will not upend the results of a proceeding based on a purported error defendant did not even attempt to correct below.

10

Defendant argues there is no forfeiture because Judge Blanchard stated at the beginning of the evidentiary hearing that she "was the judge 'who heard the testimony that was given at the original trial,' " and defense counsel "justifiably and reasonably relied on Judge Blanchard's statement."

Judge Blanchard's statement cannot excuse forfeiture when minute orders from defendant's trial and sentencing, as well as the abstract of judgment, clearly identify Judge Zacky as the judge. If Judge Blanchard spoke in error, defense counsel was in a position to correct it.

We further note defense counsel was appointed in January 2022. It was not until *November 2023* that Judge Blanchard stated she was the judge who presided over defendant's trial. The record does not indicate Judge Blanchard made a similar statement at any earlier point. Defense counsel therefore served on the case almost two years, filing two briefs and making several appearances, before Judge Blanchard made the statement upon which defendant now claims counsel "justifiably and reasonably relied." Defense counsel thus had both time and opportunity to object that Judge Zacky had not been assigned to defendant's resentencing petition.

Even if arguendo defendant preserved his challenge, and further assuming Judge Zacky would have been available to hear defendant's petition, defendant fails to demonstrate prejudice from any error in Judge Blanchard's assignment to the case. (*People v. Garcia* (2018) 29 Cal.App.5th 864, 871 [judgment or order of trial court presumed correct and " 'prejudicial error must be affirmatively shown' "].) Defendant argues he was prejudiced because Judge Blanchard presided over his codefendant Valenzuela's case, not his, and therefore Judge Blanchard was

11

evaluating his testimony not against the evidence in his own case, but in Valenzuela's case.

The appellate record does not support defendant's contention that Judge Blanchard relied on evidence from Valenzuela's case. There is no indication she took judicial notice of or otherwise reviewed the record from Valenzuela's case in evaluating defendant's section 1172.6 petition—rather, she took judicial notice of defendant's trial record. Defendant does not contend the parties' briefing in advance of the evidentiary hearing relied on evidence from Valenzuela's case, nor did the prosecution rely on any such evidence in its arguments at the resentencing hearing. Defendant identifies no statements from Judge Blanchard referring to evidence presented exclusively in Valenzuela's case. Thus, when Judge Blanchard found defendant's testimony not credible "in light of all the other evidence and statements previously made by [defendant]," defendant fails to demonstrate Judge Blanchard was referring to evidence and statements from Valenzuela's trial as opposed to his own.

To the extent defendant argues Judge Blanchard may have relied on her memory of Valenzuela's trial when ruling on defendant's petition, the record contains no evidence of this. Her mere statement, apparently in error, that she heard the testimony at the original trial does not by itself demonstrate she based her ruling on her memory of that testimony from more than a decade earlier. Even if she had, defendant fails to demonstrate how this prejudiced him. He does not, for example, discuss or identify any specific differences in the testimony presented in the two trials that might have led Judge Blanchard

to rule differently than would have Judge Zacky or a judge unfamiliar with either trial.

Defendant quotes *Santos*'s statement that "a judge who is familiar with the facts, evidence, and law already part of the record is better equipped to rule on a petition than a different judge, unfamiliar with the case, who is reviewing a cold record." (*Santos*, *supra*, 53 Cal.App.5th at p. 474.) Defendant argues Judge Zacky would have been " 'better equipped' " to rule on his petition because "Judge Blanchard did not have the benefit of hearing and observing the live testimony presented in [defendant's] case." Defendant further contends Judge Zacky, as the original trial judge, "would have been in a better position to evaluate [defendant's] credibility." Defendant notes he "testified for the first time at the hearing on the petition. Some 18 years had passed between the day of the incident and the hearing. [Defendant] was a different person, he had matured, and was not admitting to lying in the past and spoke his truth at the hearing. Having the original sentencing judge evaluate the evidence would have made a difference and a more favorable outcome for [defendant] was reasonably likely."

That Judge Zacky arguably would have been more familiar with defendant's case than Judge Blanchard does not, in and of itself, demonstrate a reasonable chance Judge Zacky would have ruled more favorably on defendant's petition, or would have found defendant's testimony credible where Judge Blanchard did not. Defendant does not discuss or identify any differences between the evidence or law at issue in the two trials that might have led Judge Zacky to rule more favorably than Judge Blanchard. Defendant therefore shows nothing more than an " ' " 'abstract possibility' " ' " of a better outcome, which is

13

insufficient to establish prejudicial error.  (*Hendrix, supra,*
13 Cal.5th at p. 944.)

Defendant's failure to establish prejudice also defeats his
contention that his counsel was ineffective for not objecting to
Judge Blanchard's assignment to the case.  (*People v. Simmons*
(2023) 96 Cal.App.5th 323, 336 [counsel not ineffective unless
" 'there is a reasonable probability that, but for counsel's [alleged]
unprofessional errors, the result of the proceeding would have
been different' "].)  In so holding, we express no opinion whether
claims for ineffective assistance of counsel are cognizable in
section 1172.6 proceedings.

## DISPOSITION

The order is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

BENDIX, Acting P. J.

We concur:

WEINGART, J.

M. KIM, J.